UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00341-MOC
[3:11-cr-258-002]

| | |
|---|---|
| **DARRYL BOOKER,** ) | |
| ) | |
| Petitioner, ) | |
| ) | MEMORANDUM OF DECISION |
| ) | and |
| Vs. ) | ORDER |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the court on Petitioner Darryl Booker's Motion to Vacate, Correct, or Set Aside Sentence pursuant to 28 U.S.C. § 2255. Petitioner alleges that he received ineffective assistance of counsel in violation of the Sixth Amendment on four grounds. He alleges that defense counsel (who was also appellate counsel) was ineffective for: 1) failing to fully explain the nature of the charges and the plea agreement he signed, 2) failing to argue that the indictment was duplicitous, 3) failing to argue outrageous government conduct, and 4) on appeal, filing an Anders brief and not raising the above three contentions with the appellate court. For the reasons that follow, the court denies Petitioner's motion and enters the following Order.

I. FACTUAL AND PROCEDURAL BACKGROUND

A. Offense Conduct

On July 14, 2011, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") met with Edward Patterson at a Wendy's Restaurant in Charlotte, North Carolina. (PSR 5, 3:11-cr-258, Doc. 81). One undercover agent told Patterson he was a drug courier for Columbian drug traffickers who live in the Charlotte area. (Id.). The undercover agents offered

1

Patterson the opportunity to rob the Columbian drug traffickers' armed stash house and presented a rough plan. (Id.). Patterson agreed to do the robbery. (Id. at 6). The group met for a second meeting at a Wendy's, during which Patterson told the undercover agents that his nephew would help with the robbery. (Id.). Patterson also told the agents that he was getting firearms and explained how he planned to carry out the robbery. (Id.).

On July 28, 2011, the undercover agents met with Patterson, along with a person referred to as "Murdering Jay," who had a gun during the meeting, as well as another individual called "Debo." (Id.). Subsequent to the meeting, Murdering Jay reportedly threatened to kill the undercover agents if there were no drugs in the stash house or if they froze during the robbery. (Id.). Less than a week later, Patterson told the undercover agents over the phone that he had five people that were members of the robbery crew. (Id. at 7).

On August 4, 2011, Patterson and several members of his crew met with the undercover agents at a gas station to discuss the planned robbery. (Id.). Shortly thereafter, Petitioner and another man arrived to join the group. (Id.). After Petitioner arrived, the crew discussed, in detail, how they planned to enter the stash house and steal the drugs, including by identifying themselves as police to surprise the people inside. (Id.). During the discussion, Petitioner asked if they had to kill the drug dealers in the stash house. (Id.). At the end of the planning discussion, the undercover agents gave a predetermined signal to the arrest team, which moved in and arrested Petitioner and his coconspirators. (Id.). During the ensuing search, agents recovered a .12 gauge shotgun and a .45 caliber rifle. (Id.).

### B. Procedural History

The Grand Jury for the Western District of North Carolina charged Petitioner, along with three codefendants, with conspiracy to interfere with commerce by threats or violence, in

violation of 18 U.S.C. § 1951(a); conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846; and conspiracy to possess a firearm in furtherance of a crime of violence and drug trafficking offense, in violation of 18 U.S.C. § 924(o). (Indictment 3:11-cr-258, Doc. 16). Petitioner was also charged individually with possession of a firearm in furtherance of a drug trafficking crime or crime of violence, in violation of 18 U.S.C. § 924(c); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

Petitioner pled guilty to all counts without a plea agreement, in a hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure. (R. 11 Hrg., 3:11-cr-258, Doc. 111). After placing Petitioner under oath, the magistrate judge read each of the charges contained in the indictment and explained the associated statutory penalties. (Id. at 4–9). At the conclusion of the explanation of the charges and penalties, Petitioner affirmed that he understood, that he had reviewed the charges with defense counsel, and that he was, in fact, guilty of the five counts. (Id. at 10, 13). Petitioner also affirmed that he had enough time to discuss "any possible defenses . . . to the charges against [him]" with counsel and that he was satisfied with counsel's services. (Id. at 14). At the conclusion of the hearing, the magistrate judge found Petitioner's plea to be knowingly and voluntarily made and accepted it. (Id. at 16).

At sentencing, Petitioner affirmed that he fully understood the questions that the magistrate judge asked him during the Rule 11 hearing, that his answers to those questions had not changed, and that he was going forward with his guilty plea because he had, in fact, committed the crimes to which he was pleading guilty. (Sent'g Hrg., 3:11-cr-258, Doc. 112). After this court affirmed the magistrate judge's findings with respect to the guilty plea, the Government stated a factual basis on the record to support Petitioner's plea. (Id. at 3–4). At the conclusion of the Government's recital, defense counsel affirmed that the facts described by the

3

Government were accurate and that Petitioner had no objection. (Id. at 5). Based on the Government's recitation, this court found that there was a factual basis for Petitioner's guilty plea and, therefore, accepted it. (Id. at 5).

Next, this court calculated an advisory guideline range of 121 to 151 months in prison, based on a total offense level of 29 and a criminal history category of IV, followed by a mandatory consecutive term of five years in prison for the § 924(c) conviction. (Id. at 6–7). This court also noted that Petitioner faced a statutory mandatory minimum of ten years in prison for the drug conspiracy conviction. (Id. at 21). In support of his argument for a sentence consistent with the statutory mandatory minimum, defense counsel stated that Petitioner "accepted responsibility" for his crimes, but argued that he was not the "mastermind" and had entered the conspiracy late. (Id. 7–9). With respect to the gun, consistent with Petitioner's earlier admission to law enforcement, defense counsel stated that Petitioner had handled the gun in the car prior to the final planning meeting but claimed that the gun actually belonged to one of the other codefendants. (Id. at 21). After hearing from both sides, this court declined to vary downward, sentencing Petitioner to 121 months in prison, followed by the mandatory consecutive term of 60 months, for a total of 181 months in prison. (Id. at 22–23).

This court entered judgment on November 7, 2012 (Judgment, 3:11-cr-258, Doc. 94), and Petitioner filed a timely notice of appeal one week later. (Notice of Appeal, 3:11-cr-258, Doc. 100). After defense counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that there were no meritorious issues for review but questioning whether the district court erred by running Booker's sentences consecutively, the United States Court of Appeals for the Fourth Circuit affirmed this court's judgment in an unpublished opinion issued July 19, 2013. (Opinion, 3:11-cr-258, Doc. 127). Petitioner did not seek a writ of certiorari from the Supreme

Court but filed the instant motion to vacate on June 23, 2014 by placing a copy in the prison mailing system. (Motion, Doc. 1).

## II. STANDARD OF REVIEW

### A. 2255 Motions

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. If a petitioner's motion survives initial review and once the Government files a Response, the court must then review the materials submitted by the parties to determine whether an evidentiary hearing is warranted under Rule 8(a) of the Rules Governing Section 2255 Proceedings. After having considered the parties' arguments and the record in this matter, the court finds that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### B. Ineffective Assistance of Counsel

The Sixth Amendment of the United States Constitution provides that all defendants charged with a crime have the right to assistance of counsel. Sixth Amendment ineffective assistance of counsel claims are examined under the two-pronged test set forth in Strickland v. Washington 466 U.S. 668 (1984). To establish a claim for ineffective assistance of counsel, a petitioner must show: 1) that counsel's performance fell below an objective standard of reasonableness, and 2) that he was prejudiced by such constitutionally deficient representation. Strickland v. Washington, 466 U.S. 687, 687-91 (1984). In assessing the performance prong, there is a strong presumption that counsel's conduct was within the wide range of reasonable

professional assistance. Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992). The prejudice prong is satisfied by showing that

> there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Srtickland, 466 U.S. at 694. The court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999) (quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993)).

The petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297 (citation omitted). If the petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Id. at 1290 (citing Strickland, 466 U.S. at 697).

   *1. Guilty Pleas*

A guilty plea must be a voluntary and intelligent decision of the defendant. Boykin v. Alabama, 395 U.S. 238, 242 (1969). A defendant's statements that his plea is voluntary and knowing is generally considered conclusive on the matter. Savino v. Murray, 82 F.3d 593, 603 (4th Cir. 1996). A defendant's statements at the plea hearing are "strong evidence" of the voluntariness of the plea agreement. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991). "[B]ecause courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy," when a defendant makes "solemn declarations in open court affirming a plea agreement," this testimony carries "a strong presumption of verity." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). The Fourth Circuit has held that "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly

6

conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Id. at 221 (citation omitted). Absent such extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

## III. DISCUSSION

Petitioner alleges ineffective assistance of counsel on four separate grounds, which the court will address *seriatim*.

### A. Alleged Ineffective Assistance of Counsel Relevant to Petitioner's Plea

Petitioner first argues that his counsel rendered ineffective assistance by failing to fully inform Petitioner of the elements of the charges against him and explain how his conduct related to those elements. Petitioner claims that despite meeting with his counsel prior to the Rule 11 hearing, the first time that he heard the elements of the charges against him was at the Rule 11 hearing. Petitioner states that his counsel told him that he was guilty and advised him to simply say "yes" to all of the magistrate judge's questions. Petitioner also argues that his affirmative answers at the Rule 11 hearing cannot provide a meaningful basis for showing that he understood the charges and his guilty plea. Essentially, Petitioner alleges that he neither understood what was said to him at the Rule 11 hearing, nor understood what he was agreeing to by entering a guilty plea. The court notes, however, that Petitioner made no indication of such confusion at either his Rule 11 hearing or his sentencing despite being offered ample opportunity to do so. Indeed, Petitioner's repeated sworn statements during the Rule 11 hearing and at sentencing indicated that he understood the charges and that he knowingly and voluntarily admitted his guilt.

7

During the Rule 11 hearing, the magistrate judge carefully reviewed each count to which Petitioner was pleading guilty to ensure that Petitioner was aware of the charges. (R. 11 Hrg., 3:11-cr-258, Doc. 111, 4-9). In response, Petitioner affirmed that he understood the charges (Id. at 10) and that he had discussed the charges and any potential defenses with his counsel. (Id. at 13-14). Acknowledging that he had had sufficient time to discuss the case with defense counsel and that he was satisfied with defense counsel's services, Petitioner admitted that he was, in fact, guilty as charged. (Id. at 14). The magistrate explicitly explained that Petitioner had a right to a trial by jury if he wanted one and that by entering a plea, Petitioner waived his right to a jury trial. (Id. at 13). Petitioner stated that he wished to continue with the plea and waive this right. (Id. at 14). The magistrate judge asked Petitioner if he had any questions and before concluding the hearing, again asked Petitioner if he had understood everything at the hearing and whether he wished to go forward with his plea. (Id. at 15). Petitioner answered affirmatively to all of these questions. In short, the magistrate judge gave Petitioner ample opportunity to express any confusion or discomfort at the Rule 11 hearing and Petitioner repeatedly indicated that he wanted to go forward with his guilty plea.

At sentencing, Petitioner affirmed that he fully understood the questions that the magistrate judge asked him during the Rule 11 hearing, that his answers to those questions had not changed, and that he was going forward with his guilty plea because he had, in fact, committed the crimes to which he was pleading guilty. (Sent'g Hrg., 3:11-cr-258, Doc. 112, 2-3). Through counsel, Petitioner stated he agreed with the Government's summary of the factual basis. (Id. at 6). In his § 2255 motion, Petitioner argues that counsel should have objected to the factual basis proffered by the Government. In support of this claim, Petitioner points to statements that defense counsel made during the sentencing hearing, highlighting Petitioner's

comparatively small role in the offense and the circumstances of his gun possession. Contrary to Petitioner's characterization, however, these statements do not cast doubt on the factual basis for Petitioner's plea, insofar as they do not undermine any of the essential elements of the conspiracy and firearm offenses.

Petitioner alleges that "it is clear that Movant's plea is involuntary due to errors by the court in the Rule 11 process and counsels [sic] error in encouraging Movant [Petitioner] to plead guilty to crimes that he did not commit." (Pet. Mot., Doc. 1, 24). However, Petitioner has failed to allege any conduct by his counsel that would circumvent the preclusive effect of Lemaster. Here, counsel has not admitted to being ineffective. It further appears that, based on a review of all the materials of record, petitioner was not an "un-counseled defendant" and has not provided any evidence that he lacked the capacity to either enter into a knowing and voluntary plea or to provide the court with truthful answers. Petitioner's statements during the criminal proceedings undermine his § 2255 claim that defense counsel failed to explain the charges he faced or challenge the factual basis for his guilty plea. Absent "extraordinary circumstances," none of which have been alleged and none of which appear from a review of the record or in the PSR (which includes sections on mental and physical health, as well as educational achievement), prevailing law provides that once the truth of the sworn statements made during a Rule 11 colloquy is established, any § 2255 request that would conflict with those averments should be summarily dismissed. U.S. v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Petitioner has failed to present compelling evidence to rebut the truth of his sworn statements. Accordingly, his allegations of ineffective assistance of counsel relevant to his guilty plea and the events at the Rule 11 and sentencing hearings fail and will be dismissed.

**B. Alleged Ineffective Assistance of Counsel for Failure to Argue that the Indictment was Duplicitous**

Petitioner also argues that he received ineffective assistance of counsel because his attorney failed to object to the indictment as duplicitous. "Duplicity is defined as 'the joining in a single count of two or more distinct and separate offenses.'" United States v. Hawkes, 753 F.2d 355, 357 (4th Cir. 1985) (quoting 1 C. Wright, *Federal Practice and Procedure* § 142, at 469 (2d ed. 1982)). "Duplicitous indictments present the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." United States v. Robinson, 627 F.3d 941, 957 (4th Cir. 2010). Petitioner contends that his indictment was duplicitous and his counsel should have objected as such because Count Three charged two distinct offenses under 18 U.S.C. § 924(c): 1) carrying a firearm during and in relation to a drug trafficking crime, and 2) possessing a firearm in furtherance of a drug trafficking crime. Petitioner alleges that "had counsel objected to the indictment being duplicitous, the outcome would have been different because the district court would have dismissed Count Three of the indictment." (Pet. Mot., Doc. 1, 28). The court finds that Petitioner presumes too much.

18 U.S.C. § 924(c)(1)(A) provides a mandatory minimum sentence for "any person who, during and in relation to any crime of violence or drug trafficking crime…*uses or carries* a firearm, *or* who, in furtherance of any such crime, *possesses* a firearm." 18 U.S.C. § 924(c)(1)(A) (emphasis added). Count Three of Petitioner's indictment charged that Petitioner, "during and in relation to a crime of violence…did knowingly and unlawfully *possess and carry* a firearm in furtherance of such crime of violence…" (Indictment, 3:11-cr-258, Doc. 16, 2) (emphasis added).

The court notes as a preliminary matter that where a statute is worded in the disjunctive, it is proper for an indictment to be stated in the conjunctive. See, e.g., United States v.

Montgomery, 262 F.3d 233, 242 (4th Cir. 2001). Prosecutors regularly, and appropriately, charge the various means of committing an offense conjunctively in one count. Griffin v. United States, 502 U.S. 46, 49–51 (1991). The Fourth Circuit "has long recognized that 'a conjunctive indictment ... permits disjunctive consideration of guilt,' and that proof of either prong charged in a conjunctive indictment will support a guilty verdict." United States v. Teagne, 178 F.3d 1288 (4th Cir. 1999) (quoting United States v. Champion, 387 F.2d 561, 563 n. 6 (4th Cir. 1967)). As such, "an indictment that charges a defendant with using and carrying a firearm under § 924(c) does not require the government to prove that the defendant both used and carried the firearm." Id. (citing United States v. Earls, 42 F.3d 1321, 1327 (10th Cir. 1994)). Here, Count Three of Petitioner's indictment was properly worded in the conjunctive.

In support of his argument, Petitioner relies heavily on a case out of the Eastern District of Virginia which, though instructive, fails to support Petitioner's position that his § 924(c) charge should have been stricken as a result of duplicity.[1] In that case, United States v. Pleasant, 125 F. Supp. 2d 173 (E.D. Va. 2000), the district court held duplicitous two counts of an indictment charging violations of § 924(c). The court noted that the "statutory text [of § 924(c)] proscribes and punishes two kinds of conduct: (1) using or carrying a firearm during and in relation to a crime of violence or drug trafficking crime; and (2) possessing a firearm in furtherance of any such crime." Pleasant, 125 F. Supp. 2d at 175.[2] The relevant language of the indictment in Pleasant is nearly identical to that of Petitioner's indictment, charging that the defendant, "during, in relation to, and in furtherance of a crime of violence, did knowingly and

---

[1] Petitioner is also instructed that while the decisions of its fellow district courts are persuasive and held in high regard, they are not binding on the decisions of this court.

[2] More recently, the Fourth Circuit has noted the same, though not specifically in the context of a duplicity analysis. See United States v. King, 628 F.3d 693, 699 (4th Cir. 2011) ("Section 924(c)…penalizes two separate types of conduct: (1) the use or carrying of a firearm during and in relation to the commission of a drug trafficking crime; or (2) the possession of a firearm in furtherance of such a crime.").

11

unlawfully carry and possess a firearm." Id. The court held that because the statutory text articulates two different kinds of offenses (carrying and possessing) that were charged in a single count in the indictment, and because the indictment conflated the two charges by "collapsing the two parts of the statute into one jumbled mess" (Id. at 183), the counts charging such offenses were duplicitous. Id. at 176. The court then dismissed these counts. Id. at 186.

Though this court finds the Pleasant analysis instructive, it likewise finds that it is neither dispositive nor entirely relevant in the instant matter, particularly in light of the fact that, unlike Petitioner, the defendant in Pleasant had not entered a guilty plea. The proper focus for Petitioner's claim here is a Strickland analysis. As such, the court will begin by examining whether counsel's failure to challenge the indictment as duplicitous in some way prejudiced petitioner.

Assuming Petitioner's best-case scenario, *i.e.* that 1) counsel raised a valid objection and 2) this court found the indictment duplicitous, this court cannot find that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 687, 694 (1984). The Fourth Circuit has found that despite any duplicity in a charging document, a conviction for the offenses involving the "carry" or "use" and "possession" of a firearm in furtherance of a drug trafficking crime should stand where "the evidence was plainly sufficient to find that [defendant] committed each of the acts charged in the indictment." United States v. Mingo, 237 Fed. Appx. 860, 864–66 (4th Cir. 2007) (per curiam) (unpublished opinion). Here, Petitioner knowingly and intelligently entered a guilty plea. See supra. Thus, there is sufficient evidence to find that petitioner committed the offenses included in Count Three. See McCarthy v. United States, 394 U.S. 459, 466 (1969) ("a guilty plea is an admission of all the elements of the formal criminal charge). See

also Roberson v. United States, No. 5:07-CR-314-FL, 2010 WL 7800171, at *5 (E.D.N.C. Apr. 27, 2010) report and recommendation adopted, No. 5:07-CR-314-FL, 2011 WL 5101573 (E.D.N.C. Oct. 26, 2011) (finding that a defendant's § 2255 motion on the grounds that counsel failed to object to an allegedly duplicitous § 924(c) indictment charge failed where defendant knowingly and voluntarily pled guilty.).

Because the court finds that Petitioner has not demonstrated the requisite prejudice for a finding of ineffective assistance of counsel, it need not consider the performance prong. Fields v. Attorney Gen., 956 F.2d 1290, 1297 (4th Cir. 1992); Strickland v. Washington, 466 U.S. 668, 697 (1984). Accordingly, Petitioner's § 2255 claim based on allegations that his counsel erroneously failed to object to his indictment as duplicitous must fail and will be dismissed.

### C. Alleged Ineffective Assistance of Counsel for Failing to Argue Outrageous Government Conduct

Petitioner also claims that defense counsel was ineffective for failing to pursue an outrageous conduct defense. He bases this contention upon his belief that the reverse "stash house" sting, which led to the charges in this matter, constitute "outrageous government conduct." Petitioner claims that his counsel should have challenged the Government's actions as to him because he did not participate in planning the robbery and he claims to not have affirmatively agreed to the robbery. However, the court finds that the Government did not engage in outrageous conduct, and as such, Petitioner has no valid claim for ineffective assistance of counsel based on what would have been a meritless motion.

While first alluded to in Rochin v. California, 342 U.S. 165 (1952), the theory of "outrageous government conduct" has its origins in United States v. Russell, 411 U.S. 423 (1973), the Supreme Court's seminal decision applying a subjective standard to the entrapment defense. In the majority opinion in Russell, then Associate Justice William H. Rehnquist, while

affirming the subjective standard for entrapment, discussed the theoretical possibility of government conduct so outrageous as to bar resort to judicial process:

> While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, *cf. Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the instant case is distinctly not of that breed.… The law enforcement conduct here stops far short of violating that 'fundamental fairness, shocking to the universal sense of justice,' mandated by the Due Process Clause of the Fifth Amendment. *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 304, 4 L.Ed.2d 268 (1960).

Id. at 431-32. Three years later, the Court and Justice Rehnquist backed away from development of a freestanding exclusionary rule for "outrageous government conduct," holding that defendants must show a specific violation of a constitutional right or Due Process. Hampton v. United States, 452 U.S. 484 (1976).

Post-Hampton, the law concerning dismissal for outrageous government conduct has developed circuit-by-circuit. The law remains clear in the Fourth Circuit that "'outrageous conduct' doctrine survives in theory, but is highly circumscribed." United States v. Hasan, 718 F.3d 338, 343 (4th Cir. 2013). In the years between Hampton and Hasan, the Fourth Circuit has consistently held that a due process violation may only be found when the conduct at issue "is outrageous, not merely offensive." United States v. Goodwin, 854 F.2d 33, 37 (4th Cir. 1988). More recently, this court held that an almost identical stash house sting conducted by the government was lawful. See United States v. Thorne, 3:13cr293 (W.D.N.C. 2014). In this circuit, the government conduct must "shock the conscience of the court." United States v. Osborne, 935 F.2d 32, 36 (4th Cir. 1991). Although Petitioner attempts to argue his claim under standards articulated by the Ninth Circuit, the standard which must be applied *here* in determining whether government conduct is so outrageous as to offend Due Process is whether

the conduct is "shocking" or "offensive to traditional notions of fundamental fairness." Osborne, 935 F.2d at 37.

In Hasan, the Fourth Circuit held that "[o]utrageous is not a label properly applied to conduct because it is a sting or reverse sting operation involving contraband." Id. at 344.[3] As observed by the Honorable T. S. Ellis, United States District Judge, in the opinion underlying the appellate court's decision in Hasan,

> such due process violations are quite rare. Indeed, the Fourth Circuit has considered the issue on several occasions and has yet to reverse a single conviction or suppress evidence based on allegations of outrageous government conduct. And this is not surprising, for a due process violation such as the one alleged here can be found "only where the official [government] conduct is outrageous, not simply offensive."

United States v. Hasan, 846 F.Supp.2d 541, 545 (E.D. Va. 2012) (footnote and citation omitted). With that standard firmly in place, when and if outrageous government conduct is shown, the appropriate remedy would be dismissal prior to trial.

Applying the Fourth Circuit standard to the facts presented in the factual basis presented at sentencing, contained in the Presentence Report, and accurately reflected in the government's Response herein, the conscience of the court is not shocked. Here, the PSR establishes that defendant has a history of violent criminal activity. The factual basis provides that the government provided him only with an opportunity to commit another violent criminal act, that he voluntarily took up that opportunity, and that he did not withdraw from such opportunity despite being provided multiple opportunities to do so.

---

[3] The Court of Appeals for the Fourth Circuit has also recently held, albeit in an unpublished decision, that there is a "high shock threshold" when a defendant makes a claim of outrageous government conduct. United States v. Erwin, 520 F. App'x 179, 180, 2013 WL 1800404, *1 (4th Cir. April 30, 2013).

The issue is not whether the government created an enticing scenario, but whether defendant willfully decided to participate in that scenario. In United States v. Jones, 18 F.3d 1145 (4th Cir. 1994), the Fourth Circuit held:

> Just as it is not outrageous for law enforcement authorities proceeding in an undercover "buy" to attempt to bargain with a seller of narcotics into selling an amount which constitutes a crime for the sole purpose of obtaining a conviction, we find it not outrageous for the government to continue to purchase narcotics from willing sellers even after a level of narcotics relevant for sentencing purposes has been sold. We do not rest our decision upon a finding, as no doubt could be made, that the government had a legitimate purpose in continuing to conduct drug transactions with the appellants over an extended period of time, i.e., the hope of locating, apprehending and convicting Thompson. We decline to impose a rule that would require the government to come forward with a purpose or motivation, other than its responsibility to enforce the criminal laws of this country, as a justification for an extended investigation or for any particular step undertaken as part of an investigation. We also decline to adopt a similar rule that would require district courts to speculate as to the motives of, or to ascribe motives to, law enforcement authorities. Due process requires no such ruminations.

Id. at 1155 (citation and footnotes omitted). In any event, there is nothing in the factual basis that Petitioner was anything but a willing participant in the scenario conceived by the government and that defendant well knew what he was getting into when he agreed to rob the imaginary stash house.

There is nothing about the undercover operation that was either "outrageous" or "offensive to traditional notions of fundamental fairness" as would warrant § 2255 relief. Goodwin, 854 F.2d at 37. The key inquiry is whether those targeted in any sting were predisposed to engage in criminal activity, whether their will was overcome by the government, and whether they voluntarily participated in all aspects of the scenario. Here, the factual basis indicates that Petitioner was ready, willing, and able to commit the stash house robbery imagined by ATF. A due process violation occurs only when the government's conduct, viewed in its totality, is so offensive that it "shocks the conscience." Having considered all the materials

16

presented, the government action here does not offend Due Process as the conduct is neither "shocking" nor "offensive to traditional notions of fundamental fairness." Thus, Petitioner's claim that trial counsel was ineffective in failing to raise such a claim is without merit and will be dismissed.

**D. Alleged Ineffective Assistance of Appellate Counsel Relevant to Petitioner's Plea**

Finally, Petitioner alleges that appellate counsel provided ineffective assistance by filing an Anders brief and not raising with the appellate court the three issues raised in his § 2255 motion and addressed in this memorandum of decision. The test for ineffective assistance of appellate counsel is the same as for trial counsel. Specifically, "[i]n order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate 1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (internal citations and quotations omitted). Appellate counsel is entitled to a "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1986)).

The only argument that Petitioner makes in alleging ineffective assistance of appellate counsel is that his attorney should have raised on appeal the alleged errors in his criminal proceedings discussed throughout this memorandum of decision. However, as the court has explained, Petitioner has not identified any errors during his proceedings that would justify

17

amending or setting aside his conviction or sentence. His counsel was not deficient for failing to make those frivolous arguments. The Fourth Circuit examined the reasonableness of Petitioner's sentence and reviewed the entire record, determining there were no meritorious issues for appeal. For these reasons, Petitioner has not demonstrated deficient performance or prejudice by appellate counsel, and this claim will be dismissed.

**IV.     CERTIFICATE OF APPEALABILITY**

While this court issued a certificate of appealability in a § 2255 motion from one of Petitioner's codefendants (Order, 3:11-cr-00258, Doc. 138) it will not do so here. Rule 22 of the Federal Rules of Appellate Procedure requires "the district judge who rendered the judgment [to] . . . issue a certificate of appealability or state why a certificate should not issue." A certificate of appealability ("COA") may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484, (2000). A petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). To meet this standard, petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. (quoting Slack, 529 U.S. at 484). Doubts about whether to grant a COA must, in all fairness, be resolved in petitioner's favor. Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997); Porter v. Gramley, 112 F.3d 1308, 1312 (7th Cir. 1997).

In its order regarding the § 2255 motion of Petitioner's codefendant, this court issued a certificate of appealability in light of two trial court decisions within the Ninth Circuit finding that stash house robbery stings constitute outrageous government conduct. Since issuing that

order and this instant one, the Ninth Circuit has reversed those trial court decisions. In explaining its decision, the Ninth Circuit stated:

> The district court erred in concluding that the government's conduct met the "extremely high standard" necessary to dismiss an indictment for outrageous government conduct. We have previously held that similar reverse-sting operations, if properly conducted, are a permissible law enforcement tactic. The government's conduct here does not go beyond the bounds of what we found acceptable in [United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013)]. The ATF targeted individuals who had already demonstrated an interest in committing robberies, and did little more than "set the 'bait'" by inventing a fictitious cocaine stash house they could rob. Once the bait was set, Defendants "responded with enthusiasm." They planned nearly every detail of the robbery without assistance, including how many men they would bring, what weapons they would use, how they would dress, how they would break into the stash house, how they would restrain any guards, where they would hide after the robbery, and where they would sell the stolen cocaine. Defendants themselves also provided the guns, disguises, and zip ties necessary for them to carry out the robbery according to the plans they made. The government's conduct here did not "violate fundamental fairness or shock the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment."

United States v. Dunlap, No. 14-50129, 2014 WL 6807733, at *1 (9th Cir. Dec. 4, 2014) (citations omitted). In light of this recent decision by colleagues in the Ninth Circuit, this court finds that no certificate of appealability is necessary in Petitioner's case, as there is no longer any question in this matter as to whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). Accordingly, the court will not issue a certificate of appealability.

**ORDER**

**IT IS, THEREFORE, ORDERED** that petitioner's Motion to Vacate, Correct or Set Aside Sentence (#1) is **DENIED** and this action is **DISMISSED** with prejudice. The Clerk of Court shall enter a Judgment consistent with this Order.

Signed: December 22, 2014

Max O. Cogburn Jr.